

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00444-CR

**IN RE THE STATE OF TEXAS**, ex. rel. Joe D. Gonzales, District Attorney, Bexar County

Original Mandamus Proceeding[1]

Opinion by:     Rebeca C. Martinez, Justice

Sitting:     Rebeca C. Martinez, Justice
             Beth Watkins, Justice
             Liza A. Rodriguez, Justice

Delivered and Filed: August 28, 2019

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

The State of Texas, through Bexar County District Attorney Joe D. Gonzales, filed a motion to disqualify defendant Michael Stovall's defense counsel. Following a hearing, the trial court denied the State's motion to disqualify. The State filed a petition for writ of mandamus, and the real party in interest and the respondent filed responses. Because we conclude the trial court erred, we conditionally grant the petition for writ of mandamus.

## BACKGROUND

Nico LaHood served as Bexar County District Attorney from January 1, 2015 through December 31, 2018. During this period, Michael Stovall was indicted for felony assault. After leaving office, LaHood is now a partner with attorney Jay S. Norton at the LaHood Norton Law

---

[1] This proceeding arises out of Cause No. 2017CR9645, styled *The State of Texas v. Michael Stovall*, pending in the 226th Judicial District Court, Bexar County, Texas, the Honorable Velia J. Meza presiding.

Group ("LaHood-Norton").[2]  Attorney Jason Goss is an employee of LaHood-Norton.  Norton and Goss are former Bexar County assistant district attorneys.  Seven days after LaHood left office, on January 7, 2019, Goss filed a motion to substitute himself as counsel for Stovall.  On May 17, 2019, LaHood, Norton, and Goss all signed a "Defendant's Timely Request for Discovery, Notice, and Investigation of *Brady* Material" on Stovall's behalf.  On June 3, 2019, the State filed a motion to disqualify LaHood-Norton on the grounds that during LaHood's tenure as Bexar County District Attorney, LaHood was privy to the State's entire case against Stovall.

During the hearing on the State's motion to disqualify, Melissa Saenz, a Bexar County family violence prosecutor, testified she first became aware of Stovall's case on December 19, 2018, she was not involved in the indictment, and she had given no thought yet to voir dire or the type of jurors she wanted.  She said that on December 20, 2018, she was asked to come to LaHood's office to discuss the Stovall case.  Saenz stated it was not unusual for LaHood to discuss a case with prosecutors.  However, it was not normal procedure to discuss a case—such as the Stovall case—before a trial setting had been obtained.

During their meeting, LaHood and Saenz reviewed 911 calls and LaHood shared his impression of the calls.  They also reviewed photographs of the complainant's injuries.  Saenz said that, while reviewing the photographs, LaHood "bit his hand to show me that — that what I was seeing on the picture really wasn't a bite mark because a bite mark would look a certain way."  Saenz said she told LaHood the mark looked like a bite mark to her.  Saenz said she and LaHood also talked about the complainant's medical history, the strengths and weaknesses of the case, and emails sent by Stovall's family to the complainant.  Saenz testified she would have turned the 911

---

[2] LaHood-Norton was formed on November 2, 2018.  The law firm began advertising in December 2018.

recordings, offense reports, and the photographs over to the defense during discovery. She stated LaHood never asked her to dismiss the case.

Marissa Giovenco, a Bexar County family violence prosecutor, testified she was assigned the Stovall case sometime after January 2019. She said she had several conversations with Goss and he asked her to dismiss the Stovall case. According to Giovenco, Goss "kind of implied that he had information that he thought would kill the case, in his opinion, as a former prosecutor." However, Goss refused to tell Giovenco what information he had. During this conversation, LaHood (who was by now in private practice) was in the courtroom and he said he would speak to Goss about whether they could share the information. Giovenco said LaHood told her later that day they would not share the information with her. Doug Campbell, the assistant district attorney who tried the Stovall case, said the only defense counsel he spoke to was Goss.

Following the hearing, the trial court signed an order denying the State's motion to disqualify. In its order, the trial court found that even if LaHood's knowledge of the case was imputed to Norton and Goss, "and regardless of whether any rules of professional responsibility were violated," the State did not meet "its heavy burden to show that [LaHood] was privy to any work product or acquired any confidential information pertaining to this case that would not have otherwise been available to defense counsel through the rules of discovery and under *Brady v. Maryland* . . . ." The court also found there was no evidence LaHood actively participated in the prosecution of the Stovall case; therefore, the State did not demonstrate actual prejudice resulting from LaHood's actions or knowledge regarding the case. The court concluded it did not have "a valid reason under the law to interfere in the defendant's constitutional right to counsel of his choice."

**STANDARD OF REVIEW**

To establish a right to mandamus relief in a criminal case, the relator must show the trial court violated a ministerial duty and there is no adequate remedy at law. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (orig. proceeding). "The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought." *Id.* A clear right to the relief sought is established "when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011) (orig. proceeding).

The State does not have the right to appeal from a trial court's denial of a motion to disqualify defense counsel. This case warrants mandamus review because it involves the intersection between "important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice"; *Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003); and a criminal defendant's right to the attorney of his choice. *See Weeks*, 391 S.W.3d at 122 ("an issue of first impression can sometimes qualify for mandamus relief when the factual scenario has never been precisely addressed but the principle of law has been clearly established."). Under these circumstances, the State is entitled to relief only if the principle of law on which it relies is "positively commanded and so plainly prescribed under the law as to be free from doubt." *In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015) (orig. proceeding) (citation omitted).

**"OF COUNSEL FOR THE STATE"**

The Texas Constitution provides that district attorneys "shall represent the State in all cases . . . ." TEX. CONST. art. V, § 21. The Texas Code of Criminal Procedure provides that "[e]ach district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed

adversely." TEX. CODE CRIM. PROC. art. 2.01. "It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done." *Id.*

In its motion to disqualify, the State relied on the following provision of the Texas Code of Criminal Procedure:

> District and county attorneys shall not be of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers, be of counsel adversely to the State in any case in which they have been of counsel for the State.

*Id.* at art. 2.08(a).

The trial court found the State did not (1) satisfy its heavy burden to show LaHood was privy to any work product or acquired any confidential information pertaining to the Stovall case that would not otherwise be available to defense counsel through the rules of discovery and under *Brady v. Maryland*, or (2) demonstrate actual prejudice resulting from LaHood's actions or knowledge with regard to the Stovall case. However, article 2.08 does not require such a showing.[3]

LaHood-Norton asserts there is no unequivocal, well-settled, and clearly controlling principal of law compelling disqualification of Stovall's counsel. We disagree. Article 2.08 unequivocally and clearly requires the disqualification of a district attorney who, after leaving

---

[3] Actual prejudice is required when a defendant moves to disqualify an elected district attorney and his or her entire office. "A trial court may not disqualify a district attorney on the basis of a conflict of interest unless that conflict rises to the level of a due-process violation." *In re Cox*, 481 S.W.3d 289, 293 (Tex. App.—Fort Worth 2015, orig. proceeding). "A trial court's authority to disqualify a prosecutor comes from the court's duty to protect the accused's constitutional due-process rights . . . ." *Id.* "For a prosecuting attorney to 'switch sides' [from defense counsel to prosecuting attorney] in the same criminal case is an actual conflict of interest and constitutes a due-process violation, even without a specific showing of prejudice." *Landers v. State*, 256 S.W.3d 295, 304 (Tex. Crim. App. 2008). "This has been called a 'hard and fast rule of disqualification.'" *Id.* (citations omitted). "But in the context of a conflict-of-interest claim that does not involve prior representation in the same criminal matter, the rule is somewhat different. A district attorney is not automatically disqualified from prosecuting a person whom he had previously represented, even when it is for the same type of offense." *Id.* "In that context, a due-process violation occurs only when the defendant can establish 'actual prejudice,' not just the threat of possible prejudice to his rights by virtue of the district attorney's prior representation." *Id.* at 304-05. "The heightened burden for disqualification of a district attorney is policy driven; unlike a private attorney, a district attorney is an elected official whose office is constitutionally mandated and protected." *Cox*, 481 S.W.3d at 293. Actual prejudice to the moving party is also required when a party seeks to disqualify the opponent's attorney for violation of an ethical rule. *Gonzalez*, 117 S.W.3d at 839.

office, is counsel "adverse[] to the State in any case in which [the former district attorney was] of counsel for the State." TEX. CODE CRIM. PROC. art. 2.08(a). The Texas Court of Criminal Appeals has held the statutory provisions requiring disqualification of judges are mandatory. *Metts v. State*, 510 S.W.3d 1, 4 (Tex. Crim. App. 2016). We likewise hold the statutory provisions of article 2.08(a) requiring disqualification of a district attorney are mandatory.

There is no dispute LaHood-Norton's attorneys are now adverse to the State in the Stovall case. The issue is whether LaHood was "of counsel for the State" in the Stovall case when he was District Attorney. The cases interpreting "counsel for the State" generally involve a situation where a district attorney later becomes a trial judge and a defendant moves for disqualification. We look to these cases for guidance because the statutes and caselaw governing disqualification of a judge discuss the similar issue of under what circumstances does a prosecutor act as "counsel for the State."

Under the Texas Constitution, "[n]o judge shall sit in any case . . . when the judge shall have been counsel in the case." TEX. CONST. art. V, § 11. In addition, the Legislature has precluded a judge from presiding over "any case where . . . he has been of counsel for the State or the accused[.]" TEX. CODE CRIM. PROC. art. § 30.01. The Texas Court of Criminal Appeals has "recognized that not every action taken by a prosecutor who later becomes a judge will merit disqualification." *Metts*, 510 S.W.3d at 4. Instead, the Court has interpreted "the disqualification provisions to mean that the judge must have 'investigated, advised or participated' as counsel in the case." *Id.* (citation omitted). "Stated another way, the judge's involvement must have arisen to a level of active participation." *Id.*

In *Metts*, the Court of Criminal Appeals held a "judge need not have an 'in-depth' knowledge of the facts before being disqualified . . . ." *Id.* at 8. The Court concluded the former prosecutor's participation in the defendant's case was more that a mere "perfunctory act" because,

however briefly, she acted as counsel for the State in defendant's case when she signed the jury waiver form. *Id.* at 5-6. The Court noted Code of Criminal Procedure article 1.13 requires "the attorney representing the State" to sign a written consent to a defendant's waiver of a jury trial. *Id.* (citing TEX. CODE CRIM. PROC. art. 1.13(a)). The Court acknowledged the former prosecutor's involvement appeared to have been limited to a brief hearing where she signed the consent to jury waiver, "but that hearing was nonetheless an integral step toward the process that resulted in [defendant's] deferred adjudication community supervision." *Id.* at 6. Therefore, the Court concluded the former prosecutor was disqualified from presiding over the defendant's adjudication hearing. *Id.* at 8.

In *Lee v. State*, 555 S.W.2d 121, 123 (Tex. Crim. App. 1977), the trial judge ("Gist") was the former Chief of the Trial Division of the District Attorney's Office when defendant was indicted. At that time, the defendant's attorney had contacted Gist to ask what the State's position was in connection with the case. Gist testified it was his practice at the time to "find out the attitude of whatever prosecutor had been assigned the file" before he responded to defense counsel's request. *Id.* at 123. Gist replied to defense counsel in a letter that stated

> I have reviewed your recent note and this case. It is a very serious offense in and of itself, and in addition, the defendant's record is deplorable.
>
> In view of all circumstances, I cannot make a recommendation less than life. At the non-jury docket call, you should request a trial, and I will make available to you all of the information in our file that is subject to discovery without the necessity of you having to file a motion.

*Id.* at 122-23.

The Court of Criminal Appeals noted the file reviewed by Gist contained a summary of the complainant's statements to investigating officers, detailed reports of the arresting and investigating officers, defendant's criminal record, and the request of the District Attorney's Office for Texas Department of Correction penitentiary packets to give information for the indictment of

defendant as a habitual criminal. *Id.* at 124. However, other than the letter, nothing else in the State's file associated Gist, as former Chief of the Trial Division, with the investigation or prosecution of the defendant's case. *Id.* Nevertheless, the Court concluded the letter Gist wrote "show[ed] that he did actually investigate the State's file and advise and participate in decisions made in that office relative to this case." *Id.* at 125. Therefore, the Court concluded Gist should be disqualified as trial judge because he had been counsel for the State and participated as such while serving on the District Attorney's staff. *Id*.

We also hold there is no requirement that a former district attorney "have an 'in-depth' knowledge of the facts before being disqualified." *See Metts*, 510 S.W.3d at 8. Although LaHood's participation must be more than merely perfunctory, if he "participated in any manner in the preparation or investigation of the case when he was [District Attorney], he would be counsel for the State." *Prince v. State*, 158 Tex. Crim. 65, 67, 252 S.W.2d 945, 946 (1952). While he was the Bexar County District Attorney, LaHood met with Melissa Saenz to review the Stovall file, which included 911 calls and photographs of the complainant's injuries. LaHood shared his impression of the 911 calls and his opinion regarding bite mark evidence. LaHood and Saenz also discussed emails Stovall's family sent to the complainant, the complainant's medical history, and the strength and weaknesses of the case. We conclude under the circumstances of this case that Texas Code of Criminal Procedure article 2.08(a) mandates LaHood's disqualification. We need not decide whether LaHood should have been disqualified under Texas Disciplinary Rule 1.10.[4]

---

[4] At the hearing, the parties also argued whether LaHood violated State Bar Rule 1.10 by having substantial involvement in the Stovall case while he was District Attorney. Rule 1.10 provides, in relevant part, as follows:

> Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.10(a), reprinted in TEX. GOV'T CODE, tit. 2, subtit. G, app. (Tex. State Bar R. art. X, § 9).

## DISQUALIFICATION OF ENTIRE FIRM

LaHood-Norton asserts that, even if LaHood is disqualified, the entire firm should not be disqualified. "[I]t is the relationship of the attorneys to the parties and to each other that controls, not whether they have actually engaged in conduct which would create a conflict." *Dillard v. Berryman*, 683 S.W.2d 13, 15 (Tex. App.—Fort Worth 1984, no writ). LaHood-Norton is a small law firm, with three attorneys at the time, and which advertises that each of the three lawyers bring "a different set of skills to their clients." "[G]iven the presumed interplay among lawyers who practice together, the rule applies not only to individual attorneys but also requires disqualification of the entire firm as well as all employees thereof." *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979) (per curiam). "[M]ore is at stake than the confidences of a private litigant. The public has an interest in seeing that criminal laws are enforced." *Id.* at 905 (holding, "For a former prosecutor to be associated with the lawyer who represents a person he earlier helped prosecute, even if only at an embryonic stage, would likely provoke suspicion and distrust of the judicial process."). Therefore, on the specific facts of this case, we conclude the entire LaHood-Norton firm is disqualified from this case.

## COUNSEL OF CHOICE

LaHood-Norton asserts this court should not disregard Stovall's right to counsel of his choice. "The Federal and Texas Constitutions, as well as Texas statute, guarantee a defendant in a criminal proceeding the right to have assistance of counsel." *Gonzalez*, 117 S.W.3d at 836. "The right to assistance of counsel contemplates the defendant's right to obtain assistance from counsel of the defendant's choosing." *Id.* at 836-37. "However, the defendant's right to counsel of choice is not absolute." *Id.* at 837. "[W]hile there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice."

*Id.* "[T]he defendant's right to counsel of choice 'cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.'" *Id.* at 845 (citation omitted) (noting, "This has been held to mean the defendant's right to a particular counsel should not be permitted to impose artificial disadvantages upon the government by truncating the State's evidence.").

The integrity of our judicial system is put at risk when a District Attorney participates, albeit briefly, as counsel for the State in a case in which he later, after leaving office, acts as counsel adverse to the State. *See United States v. Ostrer*, 597 F.2d 337, 340 (2d Cir. 1979). We conclude "society's interest in fair but unimpeded prosecution of the criminal law outweighs the defendant's right to counsel of his choice under the circumstances of this case." *Kitchin*, 592 F.2d at 905.

## CONCLUSION

We conclude the trial court erred by denying the State's motion to disqualify the LaHood Norton Law Group from serving as defense counsel for Michael Stovall. Therefore, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate its June 19, 2019 "Order Denying State's Motion to Disqualify Defense Counsel" and enter an order granting the State's motion to disqualify. The writ will issue only in the event we are notified the trial court fails to comply within fifteen days from the date of this opinion.

Rebeca C. Martinez, Justice

Do not publish